**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

CITIZENS FOR RESPONSIBILITY
AND ETHICS IN WASHINGTON
P.O. Box 14596
Washington, DC 20044,

          Plaintiff,

          v.

UNITED STATES DEPARTMENT OF
STATE
2201 C Street, N.W.
Washington, D.C. 20520,

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY
245 Murray Lane, SW
Mail Stop 0485
Washington, DC 20528, and

UNITED STATES SECRET SERVICE
950 H St NW #7800
Washington, D.C. 20223,

          Defendants.

Case No.

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

1.      Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, against Defendants U.S. Department of State ("State"), the U.S. Department of Homeland Security ("DHS"), and its component U.S. Secret Service ("USSS") seeking records relating to the evaluation of prospective venues and selection of President Trump's for-profit business, Trump National Doral, to host the Group of 20 Nations ("G20") Summit and records relating to State's policies and conduct regarding compliance with the U.S. Constitution's Emoluments Clauses.

2.    The Constitution provides for the President to receive "a Compensation" fixed by Congress during his term in office and prohibits him from "receiv[ing] within that Period any other Emolument from the United States, or any of them." U.S. Const. art. II, § 1, cl. 7. The Constitution also prohibits any "Person holding any Office of Profit or Trust under" the United States, including the President, from accepting, among other things, any "present [or] Emolument . . . of any kind whatever, from any King, Prince, or foreign state" without congressional approval. U.S. Const. art. I, § 9, cl. 8.

3.    The constitutional text—referring to "any" emolument—is "both sweeping and unqualified." *Applicability of Emoluments Clause to Employment of Government Employees by Foreign Public Universities*, 18 Op. O.L.C. 13, 17 (1994). It broadly prohibits the President's receipt of any "profit, gain, or advantage," either personally or through businesses he owns. *See District of Columbia v. Trump,* 315 F. Supp. 3d 875, 904 (D. Md. 2018) ("[T]he term 'emolument' . . . extends to any profit, gain, or advantage, of more than *de minimis* value, received by him, directly or indirectly, from foreign, the federal, or domestic governments.), *vacated as moot*, 141 S. Ct. 1262 (2021).

4.    Despite the Emoluments Clauses' prohibitions, companies in which President Trump has an ownership, control, or financial interest have routinely received payments from the federal government. It has also become routine for those companies to exploit their connection with President Trump to transact business with, and extract benefits from, foreign states and their instrumentalities as those states attempt to influence American foreign policy and presidential decision making.

5.    In September 2025, CREW submitted FOIA requests to State and USSS seeking records relating to the government's evaluation of American cities that submitted proposals to

host the G20 Summit and the ultimate selection of Trump National Doral as the host venue. Since acknowledging the requests, USSS and State have failed to release any documents or make determinations on the requests, in violation of FOIA.

6. On December 22, 2025, CREW submitted another FOIA request to State for records related to its policies and procedures regarding potential emoluments and transactions with businesses owned or controlled by the President. Since acknowledging this second request, State has failed to release any documents or make a determination, in violation of FOIA.

7. CREW now seeks declaratory relief that Defendants violate FOIA by withholding responsive, non-exempt documents and injunctive relief requiring Defendants to expeditiously process and release the requested records.

## Jurisdiction and Venue

8. The Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(C)(i). The Court also has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 2201(a), and 2202.

9. Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

## Parties

10. Plaintiff CREW is a non-profit, non-partisan organization organized under section 501(c)(3) of the Internal Revenue Code. CREW is committed to protecting the rights of citizens to be informed about the activities of government officials and agencies and to ensuring the integrity of government officials and agencies. CREW seeks to empower citizens to have an influential voice in government decisions and in the government decision-making process through the dissemination of information about public officials and their actions. To advance its

mission, CREW uses a combination of research, litigation, and advocacy. As part of its research, CREW uses government records made available under FOIA.

11.    Defendant DHS is an agency within the meaning of 5 U.S.C. § 552(f). Defendant has possession and control of the records requested of it and is responsible for fulfilling Plaintiff's request to USSS.

12.    Defendant USSS is an agency within the meaning of 5 U.S.C. § 552(f). Defendant has possession and control of the records requested of it and is responsible for fulfilling Plaintiff's request to USSS.

13.    Defendant State is an agency within the meaning of 5 U.S.C. § 552(f). Defendant has possession and control of the records requested of it and is responsible for fulfilling Plaintiff's request to State.

### Statutory and Regulatory Background

14.    FOIA, 5 U.S.C. § 552, requires federal agencies to release requested records to the public unless one or more specific statutory exemptions apply.

15.    An agency must respond to a party making a FOIA request within twenty working days, notifying that party of at least the agency's determination of which of the requested records it will release, which it will withhold and why, and the requester's right to appeal the determination to the agency head. *Id.* § 552(a)(6)(A)(i).

16.    An agency's failure to make this determination within twenty days is subject to judicial review without exhausting administrative remedies. *Id*.

17.    In "unusual circumstances" an agency may extend the time to respond to a request by no more than 10 working days, provided that the agency gives the requester written notice setting forth the unusual circumstances and the date on which the agency expects to make a

4

determination. *Id.* § 552(a)(6)(B)(i)-(iii). FOIA defines "unusual circumstances" as including the need to search for and collect responsive records from offices other than the office processing the request; the need to search for, collect, and examine a "voluminous amount of separate and distinct records"; and the need to consult another agency. *Id*. § 552(a)(6)(B)(iii).

## Factual Background

18.    According to State, the G20 was established in 1999 as a way for Finance Ministers and Central Bank Governors to coordinate macroeconomic policy between countries. *See* 2026 United States' Host Year of the G20, 90 Fed. Reg. 1215 (Jan. 7, 2025). In 2008, the G20 was upgraded to the "Heads of State/Government" level, recognizing that solving the then-current global financial crisis "would only be possible at the highest political level." *Id.*

19.    The G20 is the leading conference for international economic cooperation. The G20 members represent around 85% of gross world product, over 75% of international trade, and roughly two-thirds of the world's population. *Id.* The G20 members are: Argentina, Australia, Brazil, Canada, China, France, Germany, India, Indonesia, Italy, Japan, Republic of Korea, Mexico, Russia, Saudi Arabia, South Africa, Türkiye, United Kingdom, and United States, and two regional bodies, the European Union and African Union. *Id.* at 1215–16.

20.    At the G20 meetings, members discuss a broad range of interconnected issues, including economic development and trade, healthcare, agriculture, energy, environment and climate change, and anti-corruption. *Id.* at 1216. The G20 Summit uses a rotating Presidency system to determine who will host and lead the meetings in a given year. *Id.* The United States assumed the Presidency on December 1, 2025, and will continue through November 30, 2026. During this time, the United States will host "a series of high-level meetings throughout the year . . . culminating in a Leaders' Summit in November 2026." *Id.*

21. On January 7, 2025, State's Office of the Chief of Protocol published in the Federal Register a notice soliciting American cities for proposals to host the 2026 G20 Summit. *See id.* The notice listed Tara A. Juliard, Senior Protocol Officer, as the point of contact for the project. *Id.* The deadline for proposals was February 3, 2025.

22. To become the host for the 2026 G20 Summit, bidding cities were required to submit a detailed proposal that included: a description of the "city and/or region" and why it would be a good place to host the G20 Summit; letters of support from local officials or business leaders; descriptions of the specific venues to be used for the meetings, including the event spaces within each venue; the available accommodations in the city; the nearest airports; reputable transportation firms to move attendees; and the city's security resources. *Id.* at 1216–20. It also directed bidding cities to "[b]e sure to conduct market research that none of these venues have any questionable associations or legal issues." *Id.* at 1219.

23. The notice explained that finalists would be identified after reviewing all proposals in February 2025 and that in reaching a final decision, State's Office of the Chief of Protocol might also visit the finalist venues and meet with local officials to discuss the proposal. *Id.* at 1220.

24. In the summer of 2025, about 6 months after cities' bids were due to State, press reports revealed that President Trump was considering hosting G20 meetings at his for-profit resort in Miami, Trump National Doral.[1] President Trump had attempted to hold a similar summit at Trump Doral during his first term in office, but reversed course amid public criticism.[2]

---

[1] *See* Josh Wingrove & Jorgey Valero, *Trump Eyes His Doral Club for G-20*, Bloomberg (July 30, 2025, 16:16 PM EDT),  www.bloomberg.com/news/articles/2025-07-30/trump-eyes-doral-club-for-g-20-summit-revisiting-scrapped-idea.

[2] *See* Anita Kumar & Evan Semones, *After Backlash, Trump Says His Doral Resort Won't Host G-7 Summit*, Politico (Oct. 19, 2019, 22:07 PM EDT), www.politico.com/news/2019/10/19/trump-says-his-doral-resort-will-no-longer-host-g7-summit-000292.

25.     On September 5, 2025, President Trump announced that the G20 Summit would be held at Trump Doral,[3] claiming that "everybody wants it there, because it's right next to the airport[.]"[4]

<u>CREW's September 2025 G20 Requests to USSS and State</u>

26.     On September 19, 2025, CREW submitted a FOIA request to USSS. *See* Ex. A ("USSS Request"). CREW sought the following records:

1. All records from January 20, 2025 to the date these requests are processed relating to the evaluation and selection of venues for the G20 Summit to be hosted by the United States in 2026. This request includes, without limitation:

   A. All documents regarding proposals submitted by potential hosts of the G20 Summit, including Trump National Doral;

   B. All records mentioning Trump National Doral as a potential or actual venue for the G20 Summit, including discussions of its relative strengths and weaknesses;

   C. All communications from the Secret Service regarding the selection of venues for the G20 Summit;

   D. All records reflecting the criteria by which potential hosts and venues for the G20 Summit were evaluated; and

   E. All communications between the Secret Service and Senior Protocol Officer Tara A. Juliard regarding the selection of the venue for the G20 Summit, regardless of the email address on which such communications were conducted.

27.     On September 24, 2025, CREW submitted an identical request to State. *See* Ex. C ("First State Request").

---

[3] Zoë Richards, *Trump Says Next Year's G20 Summit Will be Held at His Resort Near Miami*, NBC News (Sept. 5, 2025, 21:11 PM EDT), www.nbcnews.com/politics/white-house/trump-g20-summit-doral-resort-miami-2026-rcna229477; The White House, *President Trump Makes Announcements*, *Sep. 5, 2025* at 1:07:08 (Sept. 5, 2025), www.whitehouse.gov/videos/president-trump-makes-announcements-sep-5-2025.
[4]  The White House, *supra* note 3, at 1:07:14.

28.     In both requests, CREW sought a fee waiver in accordance with 5 U.S.C. § 552(a)(4)(A) and applicable regulations. *See* Exs. A, C.

29.     On September 25, USSS sent CREW a letter acknowledging the USSS Request, and assigning the request FOIA File No. 20251817. *See* Ex. B. It also explained that a search was underway, but that USSS "may encounter some delay in processing [the] request" and invoked a 10-day extension under agency regulations. *Id.*

30.     On December 16, 2025, CREW received a letter via email acknowledging the First State Request, and assigning the request number: F-2025-31771. *See* Ex. D. The letter informed CREW that State would not be able to respond within 20 days due to unusual circumstances and that the agency had placed CREW's request on the complex FOIA processing track, with no indication of when it would respond. *See id.* State also denied CREW's request for a fee waiver. *Id.*

31.     CREW has received no additional communications from Defendants regarding the USSS Request or the First State Request.

32.     More than twenty days have passed since CREW submitted the USSS Request and the First State Request, and Defendants have therefore failed to comply with the timeline set out in 5 U.S.C. § 552(a)(6)(A)(i).

33.     More than thirty days have passed since CREW submitted the USSS Request and the First State Request, and Defendants have therefore failed to comply with the timelines set out in 5 U.S.C. § 552(a)(6)(B)(i) and (a)(4)(A)(viii)(II)(aa), even if the agency's time to respond to CREW's requests were extended.

CREW's December 2025 Emoluments Request to State

34.    On December 22, 2025, CREW submitted a second FOIA request to State. *See* Ex. E ("Second State Request"). CREW sought the following records:

A.  Records sufficient to show State's formal or informal policies regarding the payment, enabling, or facilitation of emoluments to the President of the United States.

B.  All communications referencing State's formal or informal policies regarding the payment, enabling, or facilitation of emoluments to the President of the United States.

C.  Records sufficient to show State's formal or informal policies regarding transactions with businesses owned or controlled by the President of the United States.

D.  All communications referencing State's formal or informal policies regarding transactions with businesses owned or controlled by the President of the United States.

E.  Records sufficient to show State's procedures for documenting transactions with businesses owned or controlled by the President of the United States.

35.    CREW sought a fee waiver in accordance with 5 U.S.C. § 552(a)(4)(A) and applicable regulations for the Second State Request. *See id.*

36.    On January 29, 2026, CREW received a letter via email acknowledging the Second State Request, and assigning the request number: F-2026-09834. *See* Ex. F. The letter informed CREW that State would not be able to respond within 20 days due to unusual circumstances and that the agency had placed CREW's request on the complex FOIA processing track, with no indication of when it would respond. *See id.* State also denied CREW's request for a fee waiver. *Id.*

37.    CREW has received no additional communications from State regarding the Second State Request.

9

38.     More than twenty days have passed since CREW submitted the Second State Request, and State has therefore failed to comply with 5 U.S.C. § 552(a)(6)(A)(i).

39.     More than thirty days have passed since CREW submitted the Second State Request, and State has therefore failed to comply with the timelines set out in 5 U.S.C. § 552(a)(6)(B)(i) and (a)(4)(A)(viii)(II)(aa), even if the agency's time to respond to CREW's requests were extended.

## CLAIM FOR RELIEF

### COUNT I
### Wrongful Withholding of Records Responsive to CREW's Requests
### (As to all Defendants)

40.     CREW repeats and re-alleges the foregoing paragraphs.

41.     In the USSS Request, CREW properly requested records within the possession, custody, and control of USSS. In the First State Request and Second State Request, CREW properly requested records within the possession, custody, and control of State.

42.     Defendants are wrongfully withholding records responsive to the USSS Request, First State Request, and Second State Request by failing to make determinations on those requests, as applicable to each Defendant, within the statutorily prescribed time period as required by FOIA, and by continuing to withhold documents that are non-exempt and responsive to CREW's FOIA requests.

43.     Defendants have failed to conduct adequate searches in response to CREW's FOIA requests.

44.     CREW has constructively exhausted its administrative remedies.

45.     CREW is therefore entitled to injunctive and declaratory relief with respect to the immediate processing and disclosure of non-exempt requested records.

**Requested Relief**

WHEREFORE, CREW respectfully requests that this Court:

1)      Order Defendants to preserve all records, in whatever form they exist, potentially responsive to CREW's requests prior to and during the processing of its requests;

2)      Order Defendants to immediately and fully process the request and disclose all non-exempt documents to CREW;

3)      Issue a declaration that CREW is entitled to immediate processing and disclosure of the requested records;

4)      Order Defendants to grant CREW's requests for fee waivers;

5)      Provide for expeditious proceedings in this action;

6)      Retain jurisdiction of this action to ensure no agency records are wrongfully withheld;

7)      Award CREW its costs and reasonable attorneys' fees in this action; and

8)      Grant any other relief that the Court may deem just and proper.

Date: March 18, 2026                    Respectfully submitted,

                                        /s/ Kayvan A. Farchadi
                                        Kayvan A. Farchadi (D.C. Bar No. 1672753)
                                        Jonathan Maier (D.C. Bar No. 1013857)
                                        CITIZENS FOR RESPONSIBILITY
                                        AND ETHICS IN WASHINGTON
                                        P.O. Box 14596
                                        Washington, DC 20044
                                        (202) 408-5565
                                        kfarchadi@citizensforethics.org
                                        jmaier@citizensforethics.org

                                        Counsel for Plaintiff